# EXHIBIT B

IN THE CIRCUIT COURT OF THE
13TH JUDICIAL CIRCUIT IN AND FOR
HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

LOUIS "DUKE" MENDEL,

    Plaintiff,

v.                                             CASE NO. 19-CA-778

NESTLE WATERS NORTH AMERICA, INC.,

    Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS

Defendant Nestlé Waters North America Inc., incorrectly named as Nestle Waters North America, Inc., by and through undersigned counsel, hereby moves to dismiss the Complaint filed by Plaintiff Louis "Duke" Mendel in its entirety. In support, Defendant states:

1.    The Complaint alleges the existence of a contractual relationship with Nestlé Waters, pursuant to which Nestlé Waters sold and delivered its bottled water and other beverage products to Plaintiff. [Compl., ¶¶1, 17, 38-39]. The Complaint states that as part of the contract for Plaintiff's purchase and receipt of delivery of these products, Nestlé Waters charged a "Fuel Surcharge" delivery fee to recover fuel costs it incurs in delivering its products to its customers. [Id. at ¶¶1, 17]. The Complaint alleges that a "Fuel Surcharge" has uniformly appeared on invoices Plaintiff received for purchases he made subject to this delivery charge. [Id. at ¶18]. The Complaint further alleges that "[Plaintiff] performed as required" under the parties' contract and paid Fuel Surcharges on multiple occasions, including as recently as November, 2018. [Id. at ¶¶6, 39].

2. The Complaint alleges Plaintiff's subjective belief that solely by using the term "Fuel Surcharge," Nestlé Waters represented that the delivery Fuel Surcharge is directly related to, fluctuates with, and is used to offset increased fuel costs—representations which are allegedly false on the theory that the Fuel Surcharge is unrelated to actual or increased fuel costs, and is profit. [*Id.* at ¶¶1, 18-19]. The Complaint further alleges that Nestlé Waters did not disclose that the Fuel Surcharge is not related or applied to its fuel costs, but is profit. [*Id.* at ¶21].

3. The Complaint should be dismissed for failure to comply with rule 1.130(a), as Plaintiff purported to attach an agreement between himself and Nestlé Waters as Exhibit 1 to the Complaint, but failed to do so. [*Id.* at ¶¶6, 38]. His Complaint should also be dismissed for failure to state a cause of action as a matter of law. *See Gator Boring & Trenching, Inc. v. Westra Const. Corp.*, 210 So. 3d 175, 181 (Fla. 2d DCA 2016) (quoting *Connolly v. Sebeco, Inc.*, 89 So. 2d 482, 484 (Fla. 1956) ("The function of a motion to dismiss a complaint is to raise as a question of law the sufficiency of the facts alleged to state a cause of action.")).

4. The First Cause of Action asserts that Nestlé Waters' charging a Fuel Surcharge is deceptive and unfair in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, *et seq.*, Fla. Stat. To state a FDUTPA claim, Plaintiff must allege facts showing (i) a deceptive act or unfair practice; (ii) causation; and (iii) actual damages. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006).

5. The First Cause of Action fails as a matter of law because it is not based on a deceptive or unfair practice. The term "Fuel Surcharge" does not, in and of itself, state a misrepresentation that was deceptive to a reasonable consumer. [Compl., ¶28]. The term "Fuel Surcharge" does not make any statement of fact respecting how Nestlé Waters calculated this delivery charge. *See Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985) (misrepresentation is

based upon a false statement of material fact). Nestlé Waters clearly disclosed on every invoice to Plaintiff the dollar amount he was being charged as a "Fuel Surcharge." His Complaint references customer invoices [Compl., ¶18], which show that Plaintiff paid Fuel Surcharges as early as December, 2009 and that each time he was charged a variable, delivery Fuel Surcharge, it was separately itemized on the face of his customer invoice before he paid it. *See* Fla. R. Civ. P. 1.130(b) (documents attached to pleading are part of pleading for all purposes); *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1056 (Fla. 4th DCA 1999) (inconsistency between allegations and facts in document attached or referred to in complaint neutralizes allegations and renders pleading objectionable). Nestlé Waters did not, however, owe Plaintiff a duty to disclose how it determined the amount of, or how it applied, the "Fuel Surcharge." [Compl., ¶29]. Nestlé Waters cannot be liable for fraudulent concealment absent a fiduciary relationship creating a duty to disclose, which does not exist in an arm's length commercial transaction. *See R.J. Reynolds Tobacco Co. v. Whitmire*, 2018 WL 6615168, at *2 (Fla. 1st DCA Dec. 18, 2018). Under Article 2 of the Florida Uniform Commercial Code, which governs transactions for the sale of goods, Nestlé Waters was under no legal obligation to disclose to Plaintiff how it calculated its delivery costs.

6. The Complaint alleges nothing deceptive or unfair to a reasonable consumer, as it relies on Plaintiff's speculative, legally-irrelevant belief as to what he thought "Fuel Surcharge" meant. *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003) (deceptive means that the practice must be likely to mislead a consumer, acting reasonably under the circumstances, to his detriment). The fuel surcharge or delivery fee was fully and completely disclosed to Plaintiff and all putative class members as part of their contracts with Nestlé Waters. In paying a delivery charge, as in paying for the bottled water itself, a reasonable consumer only

wants to know what he/she is being charged and the amount. In deciding to purchase bottled water from Nestlé Waters, a consumer does not need to know the underlying costs to produce a bottle of water or the costs, including fuel costs, to deliver the product to the consumer. Moreover, a delivery charge is additional revenue and, by definition, to the extent revenue exceeds all direct and indirect costs, it is profit. The reasonable consumer understands that if Nestlé Waters did not make a profit on the sale and delivery of its bottled water products, it would not be in business very long. [Compl., ¶29].

7. Plaintiff did not incur any actual damage caused by a deceptive or unfair act. *See Rollins*, 951 So. 2d at 873 ("FDUTPA does not provide for recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment."). As Plaintiff alleges, the delivery "Fuel Surcharge" was a term of his contract with Nestlé Waters and was expressly disclosed to him on each customer invoice he received before he purchased and paid for Nestlé Waters' products. [Compl., ¶18]. Plaintiff did not incur actual damage, as he got what he paid for when he received delivery of the products. At most, Plaintiff's Complaint is based on his personal dissatisfaction with the Nestlé Waters' contract, which is not actionable under FDUTPA. *PNR*, 842 So. 2d at 777 n. 2.

8. Even if the Complaint were viewed as having stated a FDUTPA cause of action based upon a misrepresentation or omission, Plaintiff has not pled it with the particularity required by rule 1.120(b). The Complaint "must clearly and concisely set out the essential facts of the fraud, and not just legal conclusions," by "specifically identify[ing] misrepresentations or omissions of fact, as well as [the] time, place or manner in which they were made." *Cedars Healthcare Grp., Ltd. v. Mehta*, 16 So. 3d 914, 917 (Fla. 3d DCA 2009). The Complaint does not set forth when, how, and on what basis Plaintiff contracted to purchase Nestlé Waters'

products and was charged a "Fuel Surcharge," including what specific misrepresentations or omissions were made, by whom, or the time, place, or manner in which they were done.

9. The Second Cause of Action, purporting to plead a cause of action for unjust enrichment "in the alternative" [Compl., ¶¶35-36], fails as a matter of law because it is not disputed that an express contract existed between Plaintiff and Nestlé Waters. *See Fulton v. Brancato*, 189 So. 3d 967, 969 (Fla. 4th DCA 2016) ("A plaintiff cannot pursue an equitable theory, such as unjust enrichment or quantum meruit, to prove entitlement to relief if an express contract exists."). No party contests Plaintiff's allegations that an express contract existed between Plaintiff and Nestlé Waters. [Compl., ¶¶1, 17, 38-39]. Therefore, there is no alternative fact to the existence of a contract between the parties, and no alternative cause of action for unjust enrichment premised on the nonexistence of a contract. *See Moynet v. Courtois*, 8 So. 3d 377, 379 (Fla. 3d DCA 2009) (When "there is an express contract between the parties, claims arising out of that contractual relationship will not support a claim for unjust enrichment.").

10. Another legal reason why the Second Cause of Action fails as a matter of law is that Plaintiff "received exactly what [he] bargained for." *N.G.L. Travel Assocs. v. Celebrity Cruises, Inc.*, 764 So. 2d 672, 675 (Fla. 3d DCA 2000). The Complaint alleges that, as evidenced by his customer invoices, Plaintiff paid the delivery "Fuel Surcharge" as part of his contract to buy and have delivered the products he purchased from Nestlé Waters. [Compl., ¶¶6, 18, 38-39]. As Plaintiff received consideration (*i.e.*, products and delivery), his unjust enrichment claim fails. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007); *see, e.g., Braham v. Branch Banking & Trust Co.*, 170 So. 3d 844, 848 (Fla. 5th DCA 2015) (no unjust enrichment claim for fee where bank provided service for fee).

11. The Third Cause of Action, asserting violation of the duty of good faith and fair dealing, fails as a matter of law. [Compl., ¶40]. The duty of good faith and fair dealing "is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *QBE Ins. Corp. v. Chalfonte Condo. Apt. Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). Consequently, there is no cause of action for violation of the duty "where there is no accompanying action for breach of an express term of the agreement." *Id.* Plaintiff has not pled a breach of contract and cannot use this implied covenant to override an express term to create a breach. *See Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So.2d 787, 791-92 (Fla. 2d DCA 2005). Plaintiff also cannot allege a breach of the covenant of good faith and fair dealing to delete or reform a specific contractual provision, which is exactly what he is attempting to do by claiming a refund of the delivery Fuel Surcharges he contractually agreed to pay.

12. The Complaint fails to state a cause of action as a matter of law based upon the Florida Uniform Commercial Code, § 672.607, Fla. Stat. Plaintiff's consumption and use of Nestlé Waters' bottled water products is an acceptance of the goods that obligated Plaintiff to pay "at the contract rate," which included the delivery Fuel Surcharges. *Id.* at § 672.607(1). Moreover, given his acceptance of the goods, Plaintiff's failure to notify Nestlé Waters of any breach means that he is "barred from any remedy." *Id.* at § 672.607(3)(a).

13. The Complaint also fails to state a cause of action as a matter of law based upon the voluntary payment doctrine. *See Pacific Mut. Life Ins. Co. of Cal. v. McCaskill*, 170 So. 579, 582 (Fla. 1936) ("The general rule is that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in

the first instance."). The Complaint demonstrates that Plaintiff knowingly and voluntarily paid the delivery Fuel Surcharges he now challenges. Plaintiff knew that variable Fuel Surcharges were charged as part of his contract to purchase products from Nestlé Waters. As the Complaint pleads, this delivery charge uniformly appeared on his customer invoices when he was charged a Fuel Surcharge. [Compl., ¶18]. Plaintiff voluntarily paid those delivery Fuel Surcharges, as the Complaint pleads that he paid them on multiple occasions. [*Id.* at ¶¶6, 39]. Not only does the Complaint fail to plead that these payments were made under protest or objection, but Plaintiff knew that he could dispute them because his customer invoices informed him he could do so without penalty. *See City of Miami v. Keton*, 115 So.2d 547, 551 (Fla. 1959) (requiring payment have been made under "some compulsion or coercion" to preclude voluntariness). Plaintiff's knowing, voluntary payment of the delivery Fuel Surcharges bars his Complaint.

14. Independent of Plaintiff's individual claims, the class claims fail as a matter of law because no reasonable consumer made a decision to purchase Nestlé Waters' products after speculating on how the delivery Fuel Surcharge was calculated. The reasonable consumer only considered the amount of the delivery Fuel Surcharge he/she would be charged if the product were purchased. *See PNR*, 842 So. 2d at 777 n. 2.

WHEREFORE, for all of the foregoing reasons, the Complaint should be dismissed.

/s/ *Matthew J. Conigliaro*
**Matthew J. Conigliaro**
Florida Bar No. 63525
**CARLTON FIELDS JORDEN BURT, P.A.**
Corporate Center Three at International Plaza
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, FL 33607-5780
Telephone: 813-223-7000
mconigliaro@carltonfields.com

Jeffrey M. Garrod
(Pending admission *Pro Hac Vice*)
New Jersey Bar No. 25267-1972
Orloff, Lowenbach, Stifelman & Siegel, P.A.
44 Whippany Road, Suite 100
Morristown, NJ 07960
Telephone: 973-622-6200
Facsimile: 973-622-3073
jmg@olss.com

*Attorneys for Defendant*
*Nestlé Waters North America Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 18, 2019, a true and correct copy of the foregoing was furnished via e-mail to all counsel of record, including:

Anthony Garcia
AG Law, P.A.
742 S. Village Circle
Tampa, Florida 33606
813-259-9555
Anthony@aglawinc.com

/s/ *Matthew J. Conigliaro*
Matthew J. Conigliaro
Florida Bar No. 63525